# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARYANN MISIOLEK | : | |
| | : | 1:16-cv-2306 |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| THE HERSHEY COMPANY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM & ORDER**

### June 12, 2017

Presently pending before the Court is Defendant the Hershey Company's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim. (Doc. 19). The Motion has been fully briefed (docs. 20, 21 and 22), and is thus ripe for the Court's review. For the following reasons, the Motion shall be granted in part and denied in part as outlined below.

**I.     FACTUAL BACKGROUND[1]**

On or about June 26, 2000, Defendant the Hershey Company ("Hershey") hired Plaintiff Maryann Misiolek ("Ms. Misiolek") as an industrial engineer. (Doc. 18, ¶ 8). Ms. Misiolek was hired with the title of Director of Product Costing/Capital Administration Global Financing. (*Id.*, ¶ 9). Her direct supervisor

---
[1]     The following factual background is drawn from the allegations contained in the Amended Complaint, taken in the light most favorable to Plaintiff. (Doc. 18).

1

was a man by the name of Joseph Carlin ("Mr. Carlin"). (*Id.*, ¶ 10). In September 2013, Ms. Misiolek and Mr. Carlin began a consensual romantic relationship. (*Id.*, ¶ 11).[2]

As part of her job duties, Ms. Misiolek was required to travel with Mr. Carlin to represent Hershey's business interests domestically and abroad. (*Id.*, ¶ 13). In or around February 2014, Ms. Misiolek and Mr. Carlin traveled to New York City for an overnight business trip prior to departing on official business to India. (*Id.*, ¶ 14). At Mr. Carlin's express direction, Ms. Misiolek expensed the cost of both the hotel and the meals in New York City to Hershey. (*Id.*, ¶ 15).

In June 2014, Mr. Carlin reported the consensual romantic relationship between himself and Ms. Misiolek to Hershey human resources personnel ("Hershey HR"). (*Id.*, ¶ 16). At that time, Mr. Carlin also informed Ms. Misiolek that an imminent corporate restructuring would result in one of them being transferred to a different unit within Hershey. (*Id.*). Neither Hershey HR nor executive-level management ever spoke with Ms. Misiolek concerning her relationship with Mr. Carlin. (*Id.*).

The anticipated corporate restructuring never occurred. (*Id.*, ¶ 17). In or around August 2014, Ms. Misiolek and Mr. Carlin agreed to end their relationship. (*Id.*, ¶ 17). Ms. Misiolek began to feel increasingly uncomfortable working under

---

[2] Ms. Misiolek clarifies that her relationship with Mr. Carlin in no way violated Hershey's consensual relationship policy; nor did it impact her performance at Hershey. (*Id.*, ¶ 12).

Mr. Carlin, and sought a transfer from her position to a different unit with a different supervisor. (*Id*.). However, her requests for a transfer were denied. (*Id*.). Ms. Misiolek alleges that internal transfer requests by senior-level male employees are routinely approved (*id*., ¶ 19), and that her request was denied "in an attempt to encourage her to voluntarily resign" from Hershey. (*Id*., ¶ 18).

On or about October 27, 2014, Ms. Misiolek was questioned by Hershey HR regarding the expense reports submitted pursuant to the New York City business trip. (*Id*., ¶ 20). Immediately thereafter, Ms. Misiolek was suspended for two (2) weeks pending further investigation. (*Id*., ¶ 21).

On October 29, 2014, Ms. Misiolek was terminated from her employment with Hershey. (*Id*., ¶ 22). Though she was not provided with a termination letter, Ms. Misiolek alleges that she was terminated for purported violations of Hershey's consensual relationship policy; for violations of the travel expense policy; and for violating the code of business ethics. (*Id*.). While she denies having committed these violations, Ms. Misiolek alleges that male employees in positions similar to that which Ms. Misiolek occupied were not terminated for similar violations. (*Id*., ¶ 24). Rather, they were given the opportunity to remit to Hershey the amount of the alleged transaction that violated the expense policy. (*Id*.). Accordingly, Ms. Misiolek alleges that her gender, and not these purported violations, was the cause of her termination. (*Id*., ¶¶ 27-28).

Mr. Carlin was also terminated from Hershey's employ for misconduct on or about October 31, 2014. (*Id.*, ¶ 23). No further information regarding Mr. Carlin's termination is included in Ms. Misiolek's Amended Complaint. (*See generally*, *id.*).

## II. PROCEDURAL HISTORY

Ms. Misiolek commenced this action with the filing of a Complaint on November 15, 2016. (Doc. 1). On January 18, 2016, Hershey responded with a Motion to Dismiss. (Doc. 9). On March 8, 2017, Ms. Misiolek filed the operative Amended Complaint (doc. 18), thereby terminating Hershey's prior motion. In her Amended Complaint, Ms. Misiolek alleges discrimination on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count I). She further alleges sex discrimination in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a) ("PHRA") (Count II).

Ms. Misiolek requests compensation for back pay, front pay, lost retirement benefits, lost wages, and other lost employee benefits. She also requests compensatory, statutory and punitive damages in an amount to be determined at trial, and such other relief as this Court should deem necessary. (Doc. 1, ¶ 35).

## III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise

a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead

simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV. DISCUSSION

Hershey argues that Ms. Misiolek's claims in relation to Hershey's denial of her requests to transfer should be dismissed because her allegations that she was repeatedly refused a transfer are time-barred and because Ms. Misiolek failed to include those allegations in her charge before the Equal Employment Opportunity Commission ("EEOC"). Hershey also argues that Ms. Misiolek's claims that Hershey treated her differently on the basis of her gender fail to meet the pleading standards of FED. R. CIV. P. 12(b)(6), as Mr. Carlin was also terminated pursuant to the same investigation. We first consider Hershey's argument that the denial of Ms. Misiolek's request for a transfer is time-barred and should be dismissed for failure to exhaust administrative remedies.

### A. Exhaustion of administrative remedies

Ms. Misiolek alleges that Hershey's adverse employment actions against her consisted not only of her termination, but also of Hershey's refusal to grant Ms. Misiolek a transfer to a different business unit in or around August 2014. However, Hershey argues that the purported transfer requests were denied more than 300 days before Ms. Misiolek provided her discrimination charge to the EEOC. *See Mikula v. Allegheny Cnty. of Pa.*, 583 F.3d 181, 185 (3d Cir. 2009)

("Under Title VII, a claimant in Pennsylvania must file a discrimination charge with the EEOC within 300 days of an unlawful discrimination practice." (citing 42 U.S.C. § 2000e-5(e)(1))). Hershey also contends that the denials of transfer are beyond the scope of the allegations Ms. Misiolek made in the EEOC charge. Thus, to the extent her claims encompass the denials, they should be dismissed for failure to exhaust administrative remedies.

Ms. Misiolek signed and dated the charge sent to the EEOC on August 21, 2015. The charge is time-stamped as received on August 25, 2015. Hershey avers that 300 days prior to August 25, 2015 is October 29, 2014, the date of Ms. Misiolek's termination. (Doc. 20, p. 16). According to Ms. Misiolek's Amended Complaint, Hershey denied her requests for transfer in August 2014, well prior to the end of October. Accordingly, Ms. Misiolek's allegation that she was denied a transfer on the basis of her gender is outside the 300 day statutory window.

Ms. Misiolek argues that the denial of her transfer request is not time-barred, however, because it falls fairly within the scope of her EEOC charge and the investigation that arose therefrom. The Third Circuit has held that "'the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Webb v. City of Phila.*, 562 F.3d 256, 263 (3d Cir. 2009) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 398-99 (3d Cir. 1976)).

"The purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" *Webb*, 562 F.3d at 262 (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996))).

We thus consider whether the EEOC was afforded an opportunity to investigate Ms. Misiolek's claims that her requests for transfers were denied with discriminatory intent. In response to the portion of the charge form prompting Ms. Misiolek for "the particulars," Ms. Misiolek's charge scantly alleges:

> Employer questioned and investigated a lawful, consensual romantic relationship with supervisor against which the employer had no policy. I was terminated as a result of this relationship.

(Doc. 10-2, p. 2). At no place in the charge does Ms. Misiolek mention the denial of her requests for transfer, or provide any indication to the EEOC that a transfer had even been requested. (See generally, *id*.). Certainly, Ms. Misiolek did not allege that she had requested transfers for reasons related to her relationship with Mr. Carlin, or that they had been denied intentionally to discriminate against Ms. Misiolek.

Perhaps more telling, in her brief in opposition to Hershey's Motion, Ms. Misiolek does not allege whatsoever that the denials of her requests for transfer surfaced during the course of the EEOC investigation. Instead, Ms. Misiolek is

9

entirely silent regarding the content of any interviews or interactions she might have had with the EEOC subsequent to the submission of her charge. Her sole rebuttal of Hershey's argument is a mere restatement of the standard, as she alleges that the denials of her requests constitute a continuing course of discriminatory conduct fairly within the scope of the EEOC's investigation. (Doc. 21, p. 15). Without a single factual allegation in support of this recitation, however, we cannot find that Ms. Misiolek's argument has merit. Rather, for the reasons recited above, we find that Ms. Misiolek's claim concerning her denial of a transfer did not fall within the scope of her charge. *See Green v. Postmaster General of U.S.*, 437 Fed.Appx. 174, 178 (3d Cir. July 18, 2011) (finding that a transfer which occurred after the filing of an EEO complaint "was a discreet act" outside the scope of the complaint). Accordingly, the EEOC was not adequately "on notice" that Ms. Misiolek intended to raise this claim, and to allow it to go forward here "would amount to an administrative bypass." *Webb*, 562 F.3d at 263. As such, we hold that Ms. Misiolek is precluded from raising the denials in relation to her gender discrimination claims going forward.

### B. Substantive challenges to Ms. Misiolek's gender discrimination claim

We now turn to Hershey's substantive arguments challenging Ms. Misiolek's claims of gender discrimination under Title VII and the PHRA.[3] Title VII provides that "[i]t shall be an unlawful practice . . . to discriminate against any individual . . . because of sex." 42 U.S.C. § 2000e 2(a)(1). "To state a *prima facie* case of gender discrimination, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; [and] (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination." *Stewart v. Keystone Real Estate Group, LP*, No. 4:14-CV-1050, 2015 WL 1471320, at *2 (M.D.Pa. Mar. 31, 2015) (citing *Wooler v. Citizens Bank*, 274 Fed. App'x 177, 180 (3d Cir. 2008)).

Hershey's attacks focus on the fourth element: that the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. First, Hershey asserts that Hershey terminated Mr. Carlin for the same policy violation as Ms. Misiolek. Second, Hershey contends that Ms. Misiolek has not alleged that similarly situated employees who were not members

---

[3] "It is well established that analogous Title VII and PHRA claims are interpreted coextensively." *Jones v. SEPTA*, No. 12-cv-6582-WY, 2014 WL 3887747, at *15 (E.D.Pa. Aug. 7, 2014) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (applying the "same standards" to gender discrimination claims brought under Title VII and analogous claims under the PHRA).

11

of her protected class were treated more leniently under similar circumstances. For the following reasons, Hershey's arguments lack merit.

Hershey's contention that Ms. Misiolek's claim fails because Hershey also fired Mr. Carlin is misplaced because whether Hershey terminated Mr. Carlin for the same policy violation as Ms. Misiolek requires the Court to look beyond the facts of Ms. Misiolek's well-pleaded Complaint. This we may not do at this early stage in litigation. While Ms. Misiolek alleges that Mr. Carlin was also fired "for misconduct," her Amended Complaint does not provide additional factual matter regarding when or why Mr. Carlin was terminated. (Doc. 18, ¶ 23). At this time, taking all facts in the Amended Complaint as true and in a light most favorable to Ms. Misiolek, we cannot presume based on Hershey's briefings that Mr. Carlin was indeed fired for the same misconduct as Ms. Misiolek. Accordingly, we shall not dismiss Ms. Misiolek's gender discrimination claims at this early time.

Next, Hershey argues that Ms. Misiolek failed to allege that similarly situated male employees were treated more favorably than she under similar circumstances.[4] However, in her Amended Complaint, Ms. Misiolek names

---

[4] Comparator evidence is one method by which a plaintiff may raise an inference of discrimination pursuant to the fourth element of a claim of gender discrimination. *Houston v. Dialysis Clinic, Inc.*, Civ. Action No. 13-4461, 2015 WL 3935104, at *5 (D.N.J., June 26, 2015) ("In order to raise an inference of discrimination based on comparator evidence, a plaintiff must demonstrate that: (1) the acts of the similarly situated employees were of a "comparable seriousness" and (2) the employment decision must have been made by the same supervisors") (citing *Taylor v. Procter & Gamble*, 184 F.Supp.2d 402, 410, aff'd 53 Fed. Appx. 649 (3d Cir. 2002)).

several men in senior management positions who committed violations of Hershey's expense reporting policies and/or code of business ethics but who were not terminated. (Doc. 18, ¶ 24). Rather, Ms. Misiolek alleges that these employees were "given the opportunity to remit to Hershey the amount of the alleged transgression" and did not suffer any further adverse employment action. (*Id*.).

At this early stage, and in an abundance of caution, we decline to find that Ms. Misiolek's pleadings fail to rise to the standard required by the seminal cases of *Iqbal* and *Twombly*, cited in our Standard of Review, *Section III*, above. Rather, we find that Ms. Misiolek has pled sufficient factual material such that comparator evidence exists to support her claims, which shall therefore survive a motion to dismiss. Accordingly, in this regard Hershey's Motion shall be denied.

## V. CONCLUSION

Hershey's Motion to Dismiss shall be granted in part and denied in part as elucidated above and set forth in our Order below.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. To the extent that the Plaintiff, Ms. Misiolek, seeks to include her employer's denials of requests for transfer in her claims for gender discrimination, these claims are **DISMISSED**.

2. Defendant Hershey's Motion to Dismiss is **DENIED** in all other respects.

s/ John E. Jones III  
John E. Jones III  
United States District Judge